UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EAGLESTAR INTERTRADE LIMITED,

    Plaintiff,

v.                                                       Case No. 06-C-953

DAFIN ASSET FINANCE LIMITED and
SHIPBUILDERS OF WISCONSIN, INC.

    Defendants.

## DECISION AND ORDER DENYING MOTION FOR REMAND

Plaintiff Eaglestar Intertrade Limited (""Eaglestar") commenced this action for declaratory relief against defendants Dafin Asset Finance Limited ("Dafin") and Shipbuilders of Wisconsin, Inc. (d/b/a "Burger Boat"), seeking a determination that Dafin is in default under a Sale and Purchase Agreement and a Security Agreement it entered into with Eaglestar relating to the construction of two yachts by Burger Boat. The action was commenced in the Circuit Court for Manitowoc County and removed to federal court by Dafin. The case is presently before me on Burger Boat's motion to remand the case to state court pursuant to 28 U.S.C. § 1447(c).

Plaintiff Eaglestar Intertrade is a corporation organized under the laws of the British Virgin Islands. Defendant Dafin Asset Finance is a corporation organized in the Isle of Man, and defendant Shipbuilders of Wisconsin (d/b/a "Burger Boat") is a Wisconsin corporation. In its motion for remand, Burger Boat asserts that removal is improper because: (1) it did not consent to removal; (2) Dafin was tardy in seeking removal; and (3) Burger Boat is a Wisconsin corporation, making removal improper under 28 U.S.C. § 1441(b). Although the briefs frame their arguments somewhat

differently, the central question is whether Burger Boat is a properly-joined defendant or not: if it is, then removal is improper under § 1441(b) (because Burger is an in-state defendant) regardless of whether the notice of removal was timely or whether consent was required. If, on the other hand, Burger Boat was fraudulently joined as a defendant, its status as a named defendant will be ignored for the purposes of consent and timeliness, as well as § 1441(b). For the reasons given below, I conclude Burger Boat was fraudulently joined and that its motion to remand should be denied.[1]

Under 28 U.S.C. § 1441(b), a diversity case may not be removed when any of the properly served defendants is a citizen of the state in which the action is brought.[2] The idea behind allowing a defendant to remove, after all, is the notion (perhaps benighted) that the state court will be biased only against an out-of-state defendant. Thus, "[i]n cases where at least one defendant is a citizen of the forum state, section 1441(b) prevents removal since the lack of prejudice towards the citizen defendant is felt to extend to all defendants who are viewed collectively." *Poulos v. NAAS Foods, Inc.,* 132 F.R.D. 513, 516 (E.D. Wis. 1990), *aff'd* 959 F.2d 69 (7th Cir. 1992) (citations omitted).

But, as suggested at the outset, a plaintiff cannot foreclose an out-of-state defendant's access to the federal forum merely by naming *any* in-state party as a defendant. Section 1441(b) applies only to "properly" joined defendants, so if the in-state defendant is fraudulently joined, the diverse defendant may still remove. "[F]raudulent joinder involves a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motives." *Poulos v. Naas Foods, Inc.*

---

[1] Fraudulent joinder is a term of art and does not imply wrongdoing or sharp practices.

[2] Although the briefs focus to some extent on diversity jurisdiction, it appears that subject matter jurisdiction is not problematic: regardless of which side of the "v." Burger Boat is on, there will still be diversity jurisdiction because the other two parties are foreign entities. The question is whether Burger Boat is a proper defendant for § 1441(b) purposes.

959 F.2d 69, 73 (7th Cir. 1992). "An out-of-state defendant who wants to remove must bear a heavy burden to establish fraudulent joinder. The defendant must show that, after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Id.*

Resolving whether a defendant is fraudulently joined requires analysis of the complaint and the nature of the claims brought against the defendant in question. The complaint in this case reveals that in 2004, Burger Boat contracted to manufacture two yachts for Dafin.[3] Under the yacht construction agreement, Dafin was to periodically provide Burger with "progress payments" as the course of manufacturing proceeded. In 2005, Dafin contracted with Eaglestar to lease those yachts to Eaglestar once they were built. As part of that agreement, Eaglestar paid Dafin some 10.25 million dollars, which Dafin was to use to fund the progress payments to Burger. (Compl. ¶ 13.) Eaglestar's complaint alleges that Dafin failed to adequately pay Burger Boat for its work on the yachts. Eaglestar also alleges that it was forced to pay Burger Boat itself so as not to bring the construction agreements into default. In addition, Eaglestar and Dafin had executed a security agreement, to which Burger Boat consented, the effect of which was that Eaglestar would obtain a security interest in Dafin's rights to the boats under construction if Dafin defaulted under the terms of the security agreement. Eaglestar is thus suing Dafin for failing to honor its obligations under its agreement with Burger Boat, and it also seeks to enforce the security agreement it signed with Dafin. The complaint seeks a declaratory judgment to this effect, alleging that a dispute now exists as to whether Dafin defaulted on its agreements with Eaglestar. The complaint also seeks a declaration that Burger Boat must comply with the consent agreement it signed at the same time

---

[3]Facts are taken from the complaint, which is attached to the notice of removal.

Dafin and Eaglestar entered into their agreement. Finally, the complaint seeks a declaration that Burger must continue performing under the yacht construction contracts. The net result of the relief sought in the complaint is that Eaglestar would assume all of the rights and duties under the yacht construction agreements originally possessed by Dafin.

Dafin argues that a practical examination of the complaint reveals that Burger Boat is not a true defendant in this action and that it should be deemed fraudulently joined. First, the declaratory relief the complaint seeks "against" Burger Boat is illusory because Burger and Eaglestar have already agreed to continue production and Burger has consented to continue producing the boats for Eaglestar under the construction contracts. (Compl., Ex. E.) In addition, the two parties have signed an indemnification agreement. In short, their behavior indicates that they have a mutual interest in continuing with the yacht production, which means that Eaglestar has no real dispute with Burger Boat.

In reply, Burger Boat argues that its interests in this litigation are real and supported by Wisconsin's declaratory judgment statute, Wis. Stat. § 806.04(11). Because the fraudulent joinder analysis asks whether a plaintiff would state any claim against the defendant in state court, the analysis must follow whatever state cause of action gives rise to the claim. Burger Boat reasons that Wisconsin's declaratory judgment statute very broadly indicates that "all persons shall be made parties who have or claim any interest which would be affected by the declaration," Wis. Stat. § 806.04(11), and that its rights will be "affected" by this litigation. For that principle it cites *Regal Ware Inc. v. Advanced Marketing Int'l,* 2006 WL 752899 (E. D. Wis., March 21, 2006). In that case, Judge Stadtmueller described the issue as follows: "A dispute has arisen among Regal Ware, AMI, HII, VitaLife, and Americraft regarding whether: (a) Regal Ware has the right to be the exclusive supplier to them of Cookware during the term of the Agreement, and (b) Regal Ware has

4

the right to bid on the manufacture and sale to them of any other cookware product, including the opportunity to meet any competitive price on such cookware product." *Id.* at *3. It was alleged that Americraft, one of the defendants, was fraudulently joined because it was not a signatory to the supply agreement under review between Regal Ware and AMI. But since Americraft was a distributor for AMI, it was possibly affected by a determination of whether AMI was bound to recognize the plaintiff as *its* exclusive supplier. Moreover, Regal Ware's lawsuit essentially sought a declaration that the supply agreement it had with AMI meant that it was to be the exclusive supplier to all of the named defendants, including Americraft. Thus, Judge Stadtmueller reasonably determined that if Regal Ware were successful in obtaining the declaratory relief it sought, the rights of Americraft would be affected. Accordingly, Americraft was a proper defendant and not fraudulently joined.

Just as in *Regal Ware,* Burger Boat posits, its rights will be affected if Eaglestar should be victorious in this lawsuit. It is true that *Regal Ware* demonstrates that a declaratory judgment claim may, in some cases, constitute the basis for proper joinder of a defendant; that is no surprise. But the dispute alleged in *Regal Ware* could have impacted the rights of Americraft by determining who its exclusive supplier would be. Moreover, it was clear in *Regal Ware* that Americraft's interests, if any, were *adverse* to Regal Ware. There is no such dispute here, and Burger's reliance on § 806.04(11) is unavailing. First, it is doubtful that Burger Boat even has an "interest" affected by the relief sought here. The bulk of the complaint deals with a dispute between Eaglestar and Dafin over whether Dafin committed an "Event of Default" under their security agreement. Although Burger Boat might plausibly be interested in that dispute, it has no legal "interest" in the outcome of that dispute because it is purely a matter between Eaglestar and Dafin. Accordingly, it seems unlikely that Burger has an "interest" that would be affected by the relief sought in this lawsuit.

5

Moreover, even if under § 806.04(11) Burger Boat plausibly had an interest "affected" by the declaratory relief sought in this case, that is not enough. Instead, for § 1441(b) purposes, the question is whether the in-state party is a properly served *defendant,* and there is nothing in the declaratory judgment statute requiring Burger to be made a *defendant* for the purposes of federal jurisdiction – the statute merely requires that it be made a "party." Moreover, even if Burger Boat were properly named as a defendant under § 806.04(11), the federal court may still realign that party for the purposes of the jurisdictional analysis. *American Motorists Ins. Co. v. Trane Co.,* 657 F.2d 146, 151 (7th Cir. 1981) (noting that realignment is proper "where there is no actual, substantial conflict between the parties that would justify placing them on opposite sides of the lawsuit.") Here, to the extent Burger has any interest in the litigation, it is more properly deemed a plaintiff (if anything) than a defendant. Its interest is simply in building the two yachts in question and making a profit on them. In contrast, Dafin is the only party alleged to be in breach of any agreement, making it the true defendant in the action.

To the extent Eaglestar seeks declaratory relief "against" Burger Boat, there is no indication that Burger would fail to honor its consent agreement or cease manufacturing the yachts for Eaglestar's benefit. Because there is no suggestion of adversity, it makes more sense to consider Burger Boat's interests to be aligned with Eaglestar's. If Eaglestar successfully obtains a judgment declaring that Dafin has committed an Event of Default under their security agreement, all that means is that Burger Boat must continue manufacturing the yachts for Eaglestar, which is exactly what it already agreed to in the consent it signed:

> Upon the occurrence and during a continuance of an Event of Default as defined in the Security Agreement [between Dafin and Eaglestar], the Grantee [Eaglestar] shall be entitled to exercise any and all rights of the Grantor [Dafin] under the Construction Contracts and other documents and agreements constituting part of the

6

> Security Collateral . . . and the Manufacturer [Burger Boats] will comply in all respects with such exercise by the Grantee.

(Compl., Ex. E, ¶ 1.) Paragraph 3 of the consent agreement demonstrates that "[u]pon receipt of a written notice from the Grantee stating that (i) an Event of Default has occurred and is continuing, . . . the Manufacturer will continue performance for the benefit of the Grantee under such Assigned Agreements." (*Id.* at ¶ 3.) Paragraph 8 indicates that Burger Boat "will perform and comply with all terms and provisions of each Assigned Agreement to which it is a party to be performed or complied with by it, if any, and will maintain each such Assigned Agreement in full force and effect in accordance with its terms." (*Id.* at ¶ 8.) Every indication thus demonstrates that Burger and Eaglestar have already accounted for the contingencies at issue in this lawsuit, with Burger giving Eaglestar every assurance that it will continue performing under the construction contracts. It is thus clear that Burger and Eagle are not adverse and that it makes sense to consider Burger's interest, if at all, the interest of a plaintiff rather than a defendant.

In sum, the dispute alleged in the complaint is a dispute between Eaglestar and Dafin over whether Eaglestar is entitled to assume Dafin's rights to the yachts. Although Burger Boat might care, in some sense, who the victor is, all indications are that Burger will continue manufacturing the yachts regardless of who ultimately purchases them. Even accepting Burger's argument that it has an interest in the lawsuit under Wis. Stat. § 806.04(11), that does not mean I must consider it to be a defendant for § 1441(b) purposes. The complaint's only claim "against" Burger Boat seeks a declaration merely that Burger honor its agreements. But that is an inadequate basis to consider Burger Boat a "defendant" for jurisdictional purposes, absent some indication that Burger Boat might actually not perform. No such indication exists here; indeed, Burger Boat's answer "consents to the Plaintiff's prayers for relief set forth in the complaint as they apply to Dafin ...." (Burger Boat

7

Answer at 4.) Accordingly, I conclude that Burger Boat was fraudulently joined as a defendant and that Dafin's removal was proper under 28 U.S.C. § 1441(b).[4]

For the reasons given above, **IT IS ORDERED** that defendant Burger Boat is realigned as a plaintiff and the motion to remand is **DENIED**. The clerk shall set the case for a telephonic scheduling conference.

Dated this   27th   day of November, 2006.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

---

[4]Having found Burger Boat improperly joined as a defendant, the timeliness argument falls out because the date on which Burger Boat was served did not start Dafin's removal clock ticking. *See United Computer Systems, Inc. v. AT & T Corp.,* 298 F.3d 756, 762-63 (9th Cir. 2002) ("... there is no good reason why date of service on a fraudulently joined defendant should commence the thirty-day time period for removal under § 1446(b)."). Since Dafin did file its notice of removal within thirty days of when it was served with the state court action, its notice is timely. *See also* 14C Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3732, at 330-31 & n. 58 (3d ed.1998) (collecting cases for the proposition that "the thirty-day time limits prescribed in Section 1446(b) will be ignored when removal is sought on the ground that some defendants have been joined fraudulently to prevent removal"). By the same token, the consent of an improperly served defendant is not required for removal. *Jernigan v. Ashland Oil Inc.,* 989 F.2d 812, 815 (5th Cir. 1993) ("in cases involving alleged improper or fraudulent joinder of parties, however, application of [the consent] requirement to improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists.")