UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EAGLESTAR INTERTRADE LIMITED,

    Plaintiff,

  v.                                                                                                               Case No. 06-C-953

DAFIN ASSET FINANCE LIMITED and
SHIPBUILDERS OF WISCONSIN, INC.
(d/b/a/ Burger Boat)

    Defendants.

**DECISION AND ORDER**

      Plaintiff Eaglestar Intertrade Limited has moved for summary judgment against defendant Dafin Asset Finance Limited. Through its motion, it seeks a declaratory judgment that Dafin is in default under the Sale and Purchase Agreement and the Security Agreement entered into by both parties. It also seeks a declaration that Eaglestar is the owner and holder of any and all rights Dafin had in the two Yacht Construction Agreements Dafin signed with Shipbuilders of Wisconsin, Inc., which is better known as Burger Boat. For the reasons stated herein, Eaglestar's motion will be granted.

**I. BACKGROUND**

      Plaintiff Eaglestar sought to obtain two custom yachts manufactured by Burger Boat, each of which cost roughly $15 million. Instead of paying cash for them, however, Eaglestar arranged with defendant Dafin, a lease and finance company based in the Isle of Man, to finance the boats.

Dafin did not plan to fund the yachts with its own cash reserves; instead, it acted as a sort of middleman and arranged with a London-based bank to provide the finances. Once the yachts were completed, the bank would disburse the funds, allowing Dafin to purchase the yachts. Dafin would then lease the yachts to Eaglestar for a five-year period, after which Eaglestar would become the owner.

The sticking point in this case emerged during the yachts' construction. Not surprisingly, Burger Boat is unwilling to self-fund the building of expensive custom yachts without some ongoing contribution from the customer. Thus, under the Yacht Construction Agreements between Burger Boat and Dafin, Burger Boat required Dafin to pay (for example) 5% of the purchase price upon the start of construction, with another 5% due when the hull was framed. (Koegler Aff., Ex. 3 at 3.) Further "progress payments" became due upon Burger reaching other various construction benchmarks. The problem was that the bank financing Dafin had arranged did not kick in until the yachts were *completed*. Apparently Dafin lacked the wherewithal to make these progress payments on its own, and thus it would need to obtain a temporary source of funds while the yachts were being constructed.[1]

Dafin states that it was unable to secure such financing from a bank unless Burger Boat obtained a letter of credit from a bank and an advance payment guarantee. These were required, Dafin alleges, because any lender would need assurances that Burger Boat would be able to refund any progress payments if a problem arose during the yachts' construction. In other words, just as Burger Boat needed some ongoing assurance from Dafin in the form of progress payments, anyone

---

[1]The Construction Agreements anticipated that such financing might be required: "BUILDER acknowledges that OWNER may obtain construction financing to pay in part, the payments due from OWNER under this agreement." (*Id.* at 14.)

2

lending money to Dafin to make these payments would need some assurances from Burger Boat itself.[2] Dafin asserts that Burger Boat's people assured Dafin that a guarantee and letter of credit could be obtained and would be forthcoming. For its part, Eaglestar claimed it had the finances to step in and make the progress payments in the event financing proved unavailable. In reliance on those oral representations, as well as a warning from Burger Boat that it had to act fast, Dafin signed the Yacht Construction Agreements on October 20, 2004, thereby agreeing to make the progress payments at issue here.

Then, in January 2005, Dafin and Eaglestar entered into a Sale and Purchase Agreement and a Security Agreement. The Sale and Purchase Agreement sets forth some of the provisions governing Dafin's agreement to sell and lease the yachts to Eaglestar. (Koegler Aff., Ex. 1.) The Security Agreement granted Eaglestar a security interest in the yachts. (Koegler Aff., Ex. 2.) Both agreements contain provisions essentially allowing Eaglestar to step into the shoes of Dafin if Dafin defaults on any of its obligations either to Eaglestar or Burger Boat.

In concert with these arrangements, Eaglestar made an initial payment to Dafin of some $7.357 million, and Dafin began making the progress payments to Burger Boat out of these funds. Dafin alleges that it frequently asked for Burger Boat to provide the letter of credit it had promised, but that Burger Boat always delayed with vague assurances that the letter and guarantee would be forthcoming soon. Eventually, however, with the $7.357 million from Eaglestar running out and no letter of credit in sight, Dafin stopped making the progress payments required under the agreements. At issue presently is Eaglestar's motion for summary judgment seeking a declaration

---

[2]In contrast, Dafin suggests that such assurances would not be required were it dealing with a larger company like Boeing.

that Dafin's failure to make such payments is a default under the Sale and Purchase Agreement and the Security Agreement. Essentially, Eaglestar argues that Dafin failed to perform under its contract with Burger Boat, and the failure to perform under that agreement constitutes a default under the agreements Dafin signed with Eaglestar.

## II. ANALYSIS

**1. Arbitration is Inappropriate**

Dafin first argues that the dispute is subject to arbitration because the Yacht Construction Agreement contains an arbitration clause:

> All disputes, claims or controversies of any kind arising out of or relating to this Agreement, or the breach or violation of any term of this Agreement, shall be conclusively determined and settled by expedited binding arbitration under the auspices of the American Arbitration Association . . . .

(Redman Decl., Ex. 5 at 15.)

There are at least three problems with Dafin's suggestion that arbitration is warranted. First, apart from certain situations not at issue here, "no party can be compelled to arbitrate unless that party has entered into an agreement to do so." *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001). The Yacht Construction Agreement containing the arbitration clause was entered into between Dafin and Burger Boat, and there is thus no indication that Eaglestar ever agreed to arbitrate its disputes. Second, Eaglestar is asserting its rights against Dafin for breach of the Security Agreement and Sale and Purchase Agreement by failing to make payments during construction of the yachts. As such, the fact that the Construction Agreements may contain an arbitration clause is of only tangential relevance. That is, while the present dispute between Eaglestar and Dafin necessarily involves the Yacht Construction

4

Agreements between Burger Boat and Dafin, Eaglestar is not bringing any claim pursuant to that agreement itself – which is not surprising, given that Eaglestar is not a party to those agreements.

Finally, even if the arbitration clauses somehow applied, I would conclude that Dafin has waived its ability to enforce those clauses. Arbitration is a threshold issue and should be brought to a court's attention early in the proceedings. Here, Dafin removed the case to federal court, filed a counterclaim, and proceeded with discovery. Though it cited the arbitration clause in its September 2006 answer, it never raised the issue until the plaintiff moved for summary judgment. Nor did it ever file a motion to compel arbitration. This constitutes a waiver of any right to arbitrate, or else it would give a party with arbitration rights the ability to sit on those rights with the option of asserting them in the event that developments in the judicial forum became unfavorable. Thus, the Seventh Circuit found in another case:

> Kraftmaid if it wanted arbitration could have moved for a stay of Cabinetree's suit in the Wisconsin state court. It did not. Instead it removed the case to federal district court. By doing so without at the same time asking the district court for an order to arbitrate, it manifested an intention to resolve the dispute through the processes of the federal court.

*Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388, 390 (7th Cir. 1995).

Here, as in *Kraftmaid,* it is evident that Dafin sat for too long on any arbitration rights it had. Accordingly, even if the arbitration clause applied, it is simply too late for Dafin to raise it as a defense or compel any of the other parties in this lawsuit to arbitrate any claims they have brought against it.

**2. Judgment is Appropriate Despite Dafin's Unresolved Factual Assertions**

Dafin also argues that summary judgment would be improper because Burger Boat breached an obligation it had to provide Dafin with an advance payment guarantee and a supporting letter of

5

credit from its bank. As noted earlier, Dafin claims such assurances were essential to its ability to obtain construction financing. Thus, the fact that Dafin was unable to continue making payments under the Construction Agreement is a result of Burger Boat's own breach. Dafin also argues that problems it discovered upon inspecting the yachts allowed it to withhold progress payments because its own inspection revealed that the payments were not yet due.

Dafin asserts that these questions – i.e., which party breached the Construction Agreement and whether a payment was actually due – cannot be decided on summary judgment, at least not at this stage of the proceedings. Thus, because we cannot now discern whether Dafin or Burger Boat was in breach, Eaglestar cannot claim that Dafin's failure to perform under the Construction Agreements constitutes a breach. In essence, Dafin seems to be arguing that its withholding of payments may have been justified or excused by Burger Boat's breach or by flaws in the yachts' construction.

The problem with Dafin's argument is that even if its allegations are later resolved in its favor, the Yacht Construction Agreements did not justify Dafin in withholding any progress payments. Instead, these agreements set forth a "pay now, argue later" scheme that clearly prohibits the buyer (Dafin) from withholding the progress payments as some sort of self-help remedy:

> Irrespective of any right to arbitration as set forth herein, OWNER [i.e., Dafin] *shall not delay payment of an invoice because of any claims OWNER may have or intends to assert against BUILDER,* whether in connection with this Agreement or otherwise; without prejudice, however, to OWNER'S right to arbitrate., as provided herein. Installment payments are to be timely delivered by check to Builder or by wire transfer. . . .

(Koegler Aff., Exhibit 3 at 4) (italics added).

Accordingly, because the agreements require Dafin to make the payments regardless of any claims it might have, the fact that such claims may be undeveloped at this stage is not a basis for

6

forestalling summary judgment. Failure to make progress payments is a breach of the Construction Agreements either way.

At issue here, however, are not the Construction Agreements *per se* (to which Eaglestar was not a party), but the agreements between Dafin and Eaglestar. The Security Agreement provides that an event of default includes "the failure by Grantor [Dafin] to perform any of its obligations under the Construction Contracts . . . ." (Koegler Aff., Ex. 2 at 6.) The Security Agreement further provides that in the event Dafin fails to perform under the Construction Agreements, Eaglestar has the right to perform. (*Id.*) Similarly, the Sale and Purchase Agreement between Dafin and Eaglestar states that

> Upon the occurrence and during the continuation of an Event of Default (as defined in the Security Agreement). . . (iii) Seller [Dafin] shall transfer to Buyer [Eaglestar] all its right, title and interest in and to the Equipment, the Construction Contracts, and the other collateral relating to the Equipment granted under the Security Agreement free and clear of all encumbrances created by or through Seller.

(Koegler Aff., Ex. 1 at 2.)

Because Dafin's failure to perform under the Yacht Construction Agreements was an Event of Default under the agreements between Dafin and Eaglestar, Eaglestar may enforce its contractual right to assume Dafin's rights and obligations under the Construction Agreements. Eaglestar's motion for summary judgment will therefore be **GRANTED**.[3] A judgment will be entered declaring that Dafin is in default under the Sale and Purchase Agreement and the Security Agreement and that

---

[3] Finally, Dafin suggests that the doctrines of unclean hands or equitable estoppel should bar Eaglestar's ability to enforce the agreements at issue here. Once again, however, the point is that any claims Dafin might have did not justify its failure to make progress payments pursuant to the Construction Agreements. Those agreements provide that the payments must be made or else Dafin could lose its rights to the yachts; if Dafin has a grievance or a problem with Eaglestar's or Burger Boat's performance, it may have incurred monetary damages as a result of its loss of the contract. But the provisions at issue here transferring rights to Eaglestar still apply.

7

Eaglestar is the owner of all rights Dafin had in the Yacht Construction Agreements between Burger Boat and Dafin.[4]  The clerk is directed to set the matter on for a telephonic scheduling conference to address whether judgment in favor of Eaglestar should be entered at this time or await adjudication of Dafin's counterclaim, *see* Fed. R. Civ. P. 54(b), as well as future scheduling of this case.

        **SO ORDERED** this __26th__ day of June, 2007.

                                                    s/ William C. Griesbach
                                                    William C. Griesbach
                                                    United States District Judge

---

[4] Eaglestar also seeks a declaration that, pursuant to a Consent Agreement signed by Burger Boat, Burger Boat shall continue under the Construction Agreements and comply with Eaglestar's exercise of any rights under those agreements.  I will decline at this time to enter a declaratory judgment to that effect, however.  First, there has been no indication throughout this lawsuit that Burger Boat has any intention of not dealing with Eaglestar or failing to acknowledge the Consent Agreement it signed.  Burger Boat has not been heard from during the summary judgment proceedings.  Accordingly, a judgment opining on the meaning of a Consent Agreement could be deemed an advisory opinion regarding a nonexistent controversy.  Second, it is already assumed in the judgment that Eaglestar is stepping into the shoes of Dafin under the Construction Agreements.  Thus, a declaratory judgment addressing a Consent Agreement is likely unnecessary.